*Alexander & Gary,* contra.

---

### 3215.  MATTOX *v.* THE STATE.

1. Though the evidence for the State and in behalf of the defendant is apparently in irreconcilable conflict, the evidence for the State authorizing a verdict of murder, and the evidence in behalf of the defendant clearly justifying the killing, nevertheless, if the jury believed the State's witnesses in preference to the testimony in behalf of the defendant, they were not required to find him guilty of murder, because it is inferable from the evidence that the killing was due, not to malice, but to a sudden, violent, and irresistible impulse of passion, provoked by the assault of the deceased upon the defendant's brother, who had just been unjustifiably shot down by the deceased in the defendant's presence.

2. Where the motion for new trial relies only upon the general assignments that the verdict is contrary to law and contrary to evidence, the evidence must be wholly inapplicable to the offense of which the defend-

ant is convicted, or wholly insufficient to support the particular finding rendered, before the result can be said to be contrary to law.

DECIDED APRIL 24, 1911.

Conviction of manslaughter; from Wilkes superior court—Judge Meadow.   January 14, 1911.

*F. H. Colley, Samuel L. Olive,* for plaintiff in error.

*Thomas J. Brown, solicitor-general,* contra.

RUSSELL, J.   1. At first we were inclined to the opinion that the decision of this case was controlled by the well-settled rule that where the evidence for the State requires a verdict of guilty of murder, and the evidence for the accused demands his acquittal, a verdict finding the defendant guilty of voluntary manslaughter can not stand; but upon more mature reflection we are of the opinion that there was no error in overruling the motion for new trial, because it is established by the verdict that the jury preferred the testimony for the State rather than that submitted in behalf of the defendant, and therefore the facts related by the State's witnesses must be accepted by us as the truth of the transaction.

2.   This being the case, the question arises as to whether the circumstances as detailed by the witnesses for the State were such as to authorize the jury to infer that the killing was due not to malice, but to that sudden, violent, impulse of passion, supposed to be irresistible, which will reduce a killing from murder to manslaughter.   It must be remembered that the right of mutual protection as between brothers stands upon the same footing as the defense of a parent by his child, or of a child by his parent, and that therefore the defendant, Will Mattox, by reason of his relationship, might be considered by the jury to stand in the shoes of his brother, George Mattox, as to the quality of the act.   George Mattox had just been shot down.   According to the testimony for the State, he was in no further danger, and therefore, if he had stabbed the deceased, it could not have been justified; but, if he had done so, the jury would have been authorized (in case they found that sufficient cooling time had not elapsed) to find that the stabbing was not done in malice, but was rather the result of irresistible passion, naturally provoked by a most unjustifiable deadly assault, and consequently they would have been authorized to reduce the offense from murder (which it would have been presumed to be) to voluntary manslaughter.   As a brother is endowed with the

right and charged with the duty of defending his brother, a jury could likewise infer that the unjustifiable shooting of George Mattox aroused a sudden and violent impulse of passion, due to the unjustifiable assault which the deceased had just made upon his brother, and that under the impulse of that passion, which had not had time to cool, he inflicted the blow.

If, for the purpose of defense, the defendant stood in his brother's shoes, he would stand in his shoes for all purposes, so far as the transaction under review is concerned. In other words, if George Mattox had been entitled to defend himself, the defendant would have had the right, as his brother, to defend him. If it would have been murder for George Mattox to kill the deceased, then it would have been murder for the defendant to do so; and when the deceased made an assault upon George Mattox, if as a matter of fact it was wholly unprovoked and unjustifiable, so as naturally to produce in the mind of George Mattox an intention so sudden and so just as to reduce the grade of the homicide, the same impulse could be attributed to the defendant, upon whom rested the right of defending his brother. In other words, it is for the jury to say, under all of the circumstances of the case, whether the killing was due to such legally provoked passion as would reduce their finding from murder to manslaughter; and it can not be said as a matter of law that, considering the relationship between the parties, the assault upon the defendant's brother, whom it was his duty to defend as much as himself, would not tend as much to mitigate the offense as if the assault by the deceased had been made upon himself.          *Judgment affirmed.*